**In re PIWOWAR FARMS, Debtor.**

**Bankruptcy No. 85–592.**

United States Bankruptcy Court,
W.D. Pennsylvania.

June 30, 1986.

J.E. Ferens, Jr., Waggoner & Ferens, Uniontown, Pa., for West Cent. Production Credit Ass'n.

J. Alan Johnson, Barbara Carlin, U.S. Atty's. Office, Pittsburgh, Pa., for Farmers Home Admin.

Mary Reitmeyer, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This dispute concerns priority under 13 Pa. C.S.A. § 9312(b) between two creditors, West Central Production Credit Association ("WCPCA") and Farmers Home Administration ("FmHA"). The affairs of the Debtor and these two creditors are interwoven, complicated and long, however, the parties have agreed to isolate several transactions for a resolution of this priority problem. Hopefully, after this priority issue is resolved, the other problems in this case may proceed in an orderly manner.

On March 4, 1984, the FmHA, by two separate subordination agreements, subordinated FmHA's security interest to the WCPCA on all chattels covered by its FmHA Security Agreement dated March 3, 1983 and also on the real estate listed in the FmHA mortgage dated July 14, 1980. The subordination agreements were limited to WCPCA's agreement to loan the Debtor $270,000 for 1984 operating expenses.

This $270,000 loan was consummated in early 1984.

Later on August 30, 1984, WCPCA loaned the Debtor an additional sum of $108,150. The Debtor granted WCPCA a mortgage dated August 30, 1984 in the same five parcels and a security interest dated August 30, 1984 in crops, machinery and inventory.

The issue presented now is whether the WCPCA loan of $108,150 has priority over the FmHA security interest by virtue of 13 Pa. C.S.A. § 9312(b), which reads as follows:

A perfected security interest in crops for new value given to enable the debtor to produce the crops during the production season and given not more than three months before the crops become growing crops by planting or otherwise, takes priority over an earlier perfected security interest to the extent that such earlier interest secures obligations due more than six months before the crops become growing crops by planting or otherwise, even though the person giving new value had knowledge of the earlier security interest.

There appears to be four requirements of § 9312(b):

(1) The creditor must provide new value. It is not disputed that new value was given in this case.

(2) The purpose of the new value must enable the debtor to produce crops during the current season. In this case, the purpose suggested is to permit the debtor to harvest a crop which was already growing.

(3) The new value must be given not more than three months before the crops become growing crops. In this fact situation, the disputed loan was made in August, 1984. This was six months after the growing season commenced. Obviously an August loan could not have been used for seed and planting. These crops were already growing. However, the language of this provision "not three months before" does not require the loan to be made only within the three months. It clearly forbids

the loan to be made before the three-month period. Presumably it could be made during the growing season until the crop is harvested. We interpret this provision to require the debtor to use this loan for necessary out-of-pocket expenses related to the current growing season and not for any other expenses.

(4) The fourth factor requires the prior obligations of the earlier security interest to be due and owing more than six months before the crops were planted. The purpose of this provision is not stated explicitly in the literature. This requirement "due more than six months" is the heart of our dispute. Our unique fact situation creates additional problems with this provision.

We have researched this requirement and find little help in the case law and in the notes of the U.C.C. drafters. We analogize the purpose of the § 9312(b) provision with the "purchase money" provisions of the U.C.C. When a creditor loans new money to purchase specific equipment, etc., the creditor may obtain a purchase money security interest in the item purchased *upon proper recording* and *upon notice to the prior secured creditor.* If these requirements are met, the prior security interest is subordinated to the purchase money interest in the new item. The purpose for the purchase money security interest is to permit debtors to obtain additional assets which would not be a part of the debtor's estate without the input of new money from the new creditor. Presumably an existing creditor has a blanket security interest in existing assets and assets to be acquired in the future.

Similarly, when growing crops are the item to be secured, it is presumed that without the investment of new money, the crops would not be planted. Thus § 9312(b) provides the new lender with a prime security position in the new crops.

The dispute before this Court is complicated further because the FmHA formally agreed to subordinate their prior secured interest dated March 3, 1983, which would have attached to the 1984 crop year. The subordination agreement is dated March 4, 1984, the beginning of the crop season. The WCPCA argues that the FmHA had accelerated the March, 1983 loan and it had become due, thus meeting the fourth factor of § 9312(b).

In fact, on March 15, 1983, by Notice of Acceleration, the FmHA demanded payment in full from the Debtor. However, by letter of the District Director on April 8, 1983, the FmHA postponed the acceleration until December 31, 1983. Further complicating the matter, on November 14, 1983 District Court Judge Bruce Van Sickle, United States District Court for North Dakota, issued an injunction in a class action which caused the FmHA to deaccelerate all of the FmHA loans nationwide.

■ Thus the Piwowar loans were by law technically reinstated. The failure of the FmHA to loan new money at the beginning of a crop season is the equivalent of the loan being due for purpose of § 9312(b). On these facts, the FmHA loan obligation was "due more than six months before the crops became growing crops by planting...." The WCPCA would have been able to obtain a § 9312(b) priority. Instead, WCPCA chose to deal with the FmHA by contract of subordination.

The actual fact situation and the purpose of this provision are troubling. In a simple case when the prior lender has made the loan due six months before the growing season, a new lender could come forward and lend new money and obtain prime security in the crop. Although in a technical sense the FmHA had not made the loan "due". The loan was technically due because FmHA was not willing to loan new money and the crops did not exist. Unless this is the law, it would be possible for the prior prime secured lender to put a farmer out of business by not classifying the loan as due and also not lending new money. No other lender would then be able to come forward and to lend. This cannot be the

result intended by the drafters of the U.C.C. by the term "due".

The parties amicably avoided this problem by a subordination agreement, which limited the new amount to $270,000. The subordination agreement limits the WCPCA to a loan for $270,000. Without this subordination agreement, the WCPCA March, 1984 $270,000 loan may have been protected by § 9312(b).

■ We believe WCPCA would have been in § 9312(b) prime position without this subordination, because of the unwillingness of the FmHA to lend new money to the debtor for planting new crops. However, because the parties by specific subordination agreement limited themselves to $270,000, we hold that the subordination agreement is superior and is a substitute for § 9312(b) and binding on these parties. The WCPCA under these facts was required to amend this subordination agreement. The loan of $108,150 in August of 1984 dealt with the same crop season as the loan of March 4, 1984, which was specifically subordinated. Additionally, after the subordination agreement was entered, the FmHA debt was no longer due by subordination prior to the WCPCA's $270,000 debt. The WCPCA debt was not due by its own terms. Under these facts, the August, 1984 loan does not qualify for § 9312(b).

An appropriate Order will issue.

## ORDER OF COURT

AND NOW, this 30 day of June, 1986, upon the basis of the Memorandum Opinion of even date herewith, IT IS ORDERED, ADJUDGED and DECREED that the West Central Production Credit Association loan and security agreement dated August 30, 1984 for $108,150.00 does not qualify for 13 Pa. C.S.A. § 9312(b) priority over the March 3, 1983 security agreement of the Farmers Home Administration dated March 3, 1983 and mortgage dated July 14, 1980.